SUNNY HILL FARMS DAIRY COM-
PANY, Inc., Plaintiff,

v.

Orville FREEMAN, Secretary of Agricul-
ture, United States of America,
Defendant.

No. S 67 C 19.

United States District Court
E. D. Missouri,
Southeastern Division.

Oct. 23, 1969.

James S. Newberry, Malden, Mo., for
plaintiff.

Daniel Bartlett, Jr., U. S. Atty., Daniel R. O'Neill, Asst. U. S. Atty., for defendant.

## MEMORANDUM OPINION

HARPER, Chief Judge.

This matter is presently before the court on motions by both plaintiff and defendant for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This action instituted by the plaintiff, Sunny Hill Farms Dairy Company, Inc., is a bill in equity to review the administrative ruling by the United States Secretary of Agriculture dismissing a petition filed by the plaintiff pursuant to Section 8c(15) (A) of the Agricultural Marketing Agreement Act, as amended (7 U.S.C. § 601 et seq.) (the "Act"). This review proceeding was commenced by the filing of a complaint pursuant to Section 8c(15) (B) of the Act. The Secretary has answered the complaint and filed a certified copy of the ruling together with the record upon which it is based. .

Clifford Hardin, Secretary of Agriculture of the United States has been substituted as defendant for the reason that Orville Freeman no longer holds that office and Clifford Hardin has succeeded him in office and is now Secretary of Agriculture.

The administrative action which this proceeding seeks to review was brought under Section 8c(15) (A) of the Act, wherein Sunny Hill challenged the legality of a location differential contained in an amendment of February 2, 1965, to Federal Order Number 62 ("Order") regulating the handling of milk in the marketing area of St. Louis, Missouri. The location differential provision is contained in Section 1062.52 of the Order and Sunny Hill is attacking that portion of the differential that places a plus factor of fifteen cents per hundredweight on milk purchased by Sunny Hill.

██ In this proceeding, the function of the court is to determine whether the ruling, on the record, is in accordance with the law. 7 U.S.C.A. § 608(c) (15)

(B) ; United States v. Mills, 315 F.2d 828 (4th Cir. 1963), cert. denied, Mills v. Freeman, 375 U.S. 819, 84 S.Ct. 57, 11 L.Ed.2d 54. A trial *de novo* cannot be conducted; no new issues may be injected into this review proceeding. Queensboro Farm Products v. Wickard, 137 F. 2d 969 (2nd Cir. 1943).

Prior to February 2, 1965, Sunny Hill was not a regulated handler under any Federal Marketing Order. Sunny Hill Farms Dairy Company, Inc., is a Missouri corporation, with its registered office at Cape Girardeau, Missouri. The county of Cape Girardeau was not then included in the St. Louis marketing area. In June, 1963, hearings were held in St. Louis relating to proposed amendments to the St. Louis marketing order, wherein Cape Girardeau County and other Missouri counties between Cape Girardeau County and the St. Louis marketing area would be included in the St. Louis marketing area.

In May, 1964, the Department of Agriculture issued a recommended decision in which the Missouri counties as proposed were included in the St. Louis marketing area. It further recommended that handlers in the newly included counties pay the same price for milk as the St. Louis handlers. Exceptions were filed to the recommended decision. On November 5, 1964, the Department of Agriculture issued its final decision which modified the recommended decision. The final decision provided for an additional fifteen cents per hundredweight above the minimum price for milk for handlers in the counties of Cape Girardeau, Perry and Ste. Genevieve. It further set up two zones with mileage to be calculated from either St. Louis or Cape Girardeau, depending on which one the plant was closer to. (7 C.F.R. 1062.52). The Order became effective February 1, 1965.

On February 2, 1966, Sunny Hill filed its administrative proceeding under Section 8(15) (A). In May, 1966, a hearing was held and in January, 1967, a recommended decision was made dismissing the petition. On appeal to the

Secretary of Agriculture, the recommended decision was sustained.

A brief summary of the Milk Marketing Order and certain pertinent facts of the case is in order. Under the Order, milk is classified according to the use made of it by milk companies or "handlers". Class I milk is fluid milk and Class II milk is used to manufacture such products as cheese, butter and ice cream. The Order establishes a minimum price for each class of milk.

The purpose and reasons for the milk marketing program are fully described in Judge Frank's opinion in Queensboro Farm Products v. Wickard, 137 F.2d 969, 974 (2nd Cir. 1943). See also United States v. Rock Royal Cooperative, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446, and Lewes Dairy, Inc. v. Freeman, 401 F.2d 308 (3rd Cir. 1968). In Lewes, at pp. 311–312, the court summarizes:

"These established prices reflect those which would usually be paid for milk depending on use value. Because of the price differential in an unregulated market, where the supply of fluid milk is greater than the demands of the fluid milk market, chaotic conditions often resulted among producers each seeking to benefit from the greater use value, and therefore the higher price paid for milk used in fluid form. One of the major purposes of the Agricultural Marketing Agreement Act was to create and maintain an orderly market and, in so doing, assure the dairy farmer an adequate minimum price for the milk he delivered to the handlers regardless of how the milk was later used. To avoid the often destructive competition of the unregulated market, a method was devised whereby handlers are required to pay at least a uniform 'blend' price to the producers regardless of the use to which it has been put. * * * In promulgating a marketing order the Secretary must consider the supply of milk upon which the market * * * regularly and normally depends. * * * The regulatory scheme was designed to affect those plants of handlers which have substantial business in the market area. * * * The net result of this regulation is that handlers pay for the milk according to its use value to them while the producer farmers are protected from the perilous competition for the fluid milk market by the automatic allocation to them of the blend price which apportions the profitable fluid milk market and the burdensome surplus market among all the producers that serve the marketing area."

Sunny Hill operates one milk plant located in Cape Girardeau County, Missouri. Sunny Hill's sales area includes Cape Girardeau and Bollinger Counties (50%); St. Louis (19%); Memphis, Tennessee (21%); Paducah, Kentucky (4%); and unregulated areas (6%). Sales in the existing St. Louis marketing area are, therefore, sixty-nine percent of its total sales. Ninety percent of its sales are Class I sales, that is, the sale of fluid milk.

In the present case, Sunny Hill is the only regulated handler in Cape Girardeau County. There are no regulated handlers in Ste. Genevieve and Perry Counties. The Order specifically recognizes that fact, but states that should there be other regulated handlers in those counties, the same provisions of the Order as apply to Sunny Hill would be applicable. Sunny Hill asserts that the Order is unlawfully discriminatory for the reason that it is the only handler in the marketing area that is required to pay an additional fifteen cents per hundredweight above the minimum price. Sunny Hill further alleges that the additional fifteen cents constitutes an unlawful trade barrier. Sunny Hill seeks relief in the form of the removal of the fifteen-cent location differential now required by Section 1062.52(a) and the deletion of Cape Girardeau as a base for zoning.

The statutory authority for location differentials is found in 7 U.S.C.A. § 608(c) (5) (A):

"(5) In the case of milk and its products, orders issued pursuant to this section shall contain one or more of the following terms and conditions, and (except as provided in subsection (7) of this section) no others:

"(A) Classifying milk in accordance with the form in which or the purpose for which it is used, and fixing, or providing a method for fixing, minimum prices for each such use classification which all handlers shall pay, and the time when payments shall be made, for milk purchased from producers or associations of producers. Such prices shall be uniform as to all handlers, subject only to adjustments for (1) volume, market, and production differentials customarily applied by the handlers subject to such order, (2) the grade or quality of the milk purchased, and (3) the locations at which delivery of such milk, or any use classification thereof, is made to such handlers."

The pertinent parts of the order in dispute are as follows:

"§ 1062.52 *Location Adjustments to Handlers.* (a) For producer milk which is received at a pool plant located more than 30 airline miles from the City Hall in St. Louis, Missouri, which is classified as Class I milk, and for other source milk for which a location adjustment credit is applicable, the price specified is § 1062.51(a) shall, except as provided in subparagraphs (1), (2), and (3) of this paragraph, be reduced by 16 cents per hundredweight plus one cent for each 10 miles or fraction thereof that such distance exceeds 40 miles.

"(1) At a pool plant located more than 30 airline miles from the City Hall in St. Louis but located in Madison, Monroe or St. Clair County or in Sugar Creek, Looking Glass, St. Rose, Breese or German-

town Township in Clinton County, all in the State of Illinois, the price specified in § 1062.51(a) shall be reduced 10 cents per hundredweight; and

"(2) At a pool plant located in Cape Girardeau, Perry or Ste. Genevieve County, Missouri, the price specified in § 1062.51(a) shall be increased 15 cents per hundredweight; and

"(3) At a pool plant outside the counties of Cape Girardeau, Perry or Ste. Genevieve and more than 30 airline miles from the City Hall in Cape Girardeau but nearer to the City Hall in Cape Girardeau than to the City Hall in St. Louis, the price specified in § 1062.51(a) shall be reduced one cent plus an additional one cent for each 10 miles or fraction thereof that such distance exceeds 40 miles from the City Hall in Cape Girardeau.

"(b) For purposes of calculating such adjustment, transfers between pool plants shall be assigned Class I disposition at the transferee plant, in excess of the sum of 95 percent of the receipts at such plant from producers and cooperative associations pursuant to 1062.12(d), and the volume assigned as Class I to receipts from other order plants and unregulated country plants, such assignment to be made first to transferor plants at which no location adjustment credit is applicable and then in sequence beginning with the plant at which the least location adjustment would apply."

The pertinent parts of the final decision, reflecting the facts upon which it is based, on November 5, 1964, pertaining to location differentials is as follows:

"9. *Location differentials.*

(a) The St. Louis order location differential provisions should be modified by providing for adjustments in the Class I and uniform prices of: (1) plus 15 cents per hundredweight

at pool plants located in Cape Girardeau, Perry, or Ste. Genevieve County, Missouri; and (2) minus 10 cents per hundredweight at pool plants located more than 30 miles from the City Hall in St. Louis but located in Madison, Monroe or St. Clair County or in Sugar Creek, Looking Glass, St. Rose, Breese or Germantown Township in Clinton County, all in the State of Illinois. The City of Cape Girardeau should also be added as a basing point.

Under the St. Louis order Class I and uniform prices are reduced 16 cents at plants in the 30–40 mile zone and an additional cent for each mile or fraction thereof beyond 40 miles from the City Hall in St. Louis.

The expansion of the marketing area recommended herein would regulate city plants beyond 40 miles from the City Hall in St. Louis. One such plant is located at Cape Girardeau, Missouri, approximately 120 miles south of St. Louis. Under the present order a location differential of minus 22 cents would be applicable at this plant. Several witnesses proposed that the order provide for a plus differential of 26 cents at Cape Girardeau. The proponents argued that the plus differential would be necessary for price alignment with markets in Kentucky, Tennessee and Arkansas.

Producer milk should be priced in relation to its location value. Generally, in order to obtain an adequate supply of milk, markets south of the surplus milk production area (Minnesota and Wisconsin) require progressively higher prices for milk corresponding to the increased cost of transporting milk from such alternative milk supply areas.

Cape Girardeau is approximately 120 miles from St. Louis. It is located on the southern fringe of the supply areas for the St. Louis and Suburban St. Louis Markets. Milk produced on farms immediately south of Cape Girardeau (in Scott and Mississippi Counties) is purchased by an unregulated handler located in Sikeston, Missouri (31 miles south of Cape Girardeau). The Sikeston handler pays his producers the St. Louis order Class I price plus 20 cents for milk received from them. The Paducah, Kentucky, marketing area is directly east of Mississippi County. The Class I and blend prices under the Paducah order exceeded the St. Louis order prices by an average of 14 cents and 30 cents, respectively, during the 12-month period preceding the time of the hearing.

The handler at Cape Girardeau purchases most of his supply of milk from producers located in Cape Girardeau County. His pay price to producers has been about 15 cents per hundredweight above the minimum prices received by producers in the county who supply regulated handlers located in St. Louis and in the Suburban St. Louis market.

The Recommended Decision provided for a price at Cape Girardeau equal to the f. o. b. St. Louis price. However, after a careful review of the record in light of the exceptions to the recommended decision, it is concluded that a price 15 cents per hundredweight above the St. Louis price would be more appropriate for the Cape Girardeau area. Such a price at Cape Girardeau appears necessary to assure an adequate supply for plants in the area and also provide for better alignment of prices between orders.

At the present time there are no plants located in the counties of Perry and Ste. Genevieve. If a plant were to be located in these counties, the Class I price should be the same as at Cape Girardeau to assure proper price alignment with markets to the south.

The City of Cape Girardeau should also be added as a basing point for determining location differentials at plants located near Cape Girardeau but outside the Counties of Cape Gir-

ardeau, Perry and Ste. Genevieve. At the present time no plants so located are expected to become subject to regulations. However, should a plant in such a location become regulated, the prices applicable at such plant should be aligned with those at Cape Girardeau.

In addition to the exceptions filed regarding the recommended price in the Cape Girardeau area, several requests were made to reopen the hearing to reconsider the issue. Careful consideration of the information supplied with the requests to reopen the hearing does not warrant such action. There is no reason to believe from such information that the proposed amendments provided herein would not be appropriate for adoption at this time. Therefore, the requests for reopening of the hearing must hereby be denied."

Thus, the final decision of November 5th is primarily designed to properly align the St. Louis marketing area and areas to the south and to account for the fact that before regulation Sunny Hill had paid producers about 15 cents per hundredweight above the minimum price.

Zuber v. Allen, 131 U.S.App.D.C. 109, 402 F.2d 660, 672–673 (1967) defines the permissible differentials as follows:

"But the only 'location' differential permitted by the Act is one for 'the location at which delivery' of the milk is made to the handler. Plainly, this exception was designed to recognize differences in transportation costs only." \* \* \* (p. 672.)

"\* \* \* The Committee Reports in respect of the 1935 Act are explicit that 'the market differential is a differential which is given to the producer to compensate him for delivering his milk to a city market instead of to a country plant.' \* \* \* (p. 673.)

"The purpose of establishing zone differentials is to achieve a high degree of uniformity in prices to all handlers f. o. b. the market for milk which is received from producers at plants located at various distances from the principal consumption area. To achieve this purpose, the zone differentials must closely reflect costs generally incurred in receiving milk at country plants and moving such milk to city plants." (Footnote 39, p. 673.)

■ Undisputedly, it is the function of the Secretary in promulgating marketing orders to provide for an orderly market. In so doing, he may look at all aspects and conditions of the market. And absolute equality is not required in order that the operation of the order be sustained. United States v. Mills, 315 F.2d 828, 838 (4th Cir. 1963) cert. denied, Mills v. Freeman, 375 U.S. 832, 84 S.Ct. 57, 11 L.Ed.2d 54. But the powers of the Secretary are not unlimited. Blair v. Freeman, 125 U.S.App.D.C. 207, 370 F.2d 229 (1966). In testing the Order here, consideration is given to the narrow confines of the Secretary's power and the determination of the validity of the Order in view of the purported source of authority and the underlying rationale disclosed by the record.

Plaintiff sells approximately 69% of its milk in the St. Louis marketing area. The remaining sales are in southern markets and unregulated areas. Plaintiff enjoys a price advantage over handlers in the southern areas. In its brief, the Secretary argues that the disadvantage to plaintiff in the cost of milk in the St. Louis marketing area is offset by the advantage plaintiff receives in its sales of milk in the southern markets. We are not impressed by this rationale. The Order in this case does not and cannot regulate sales in marketing areas governed by other marketing orders. If the handlers in southern markets are unduly disadvantaged, the southern market orders are appropriate vehicles for correcting it. Each order's function is to regulate sales of milk within the marketing area governed by it. Sales within a marketing area of milk brought in

from outside the area can be provided for by the order governing the area where the sales are made. See Lehigh Valley Coop v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962); Fitchett Bros. v. Freeman, 241 F.Supp. 181 (S.D.N.Y.1965).

■ Within the St. Louis marketing area plaintiff suffers a 15 cent per hundredweight disadvantage in the cost of its milk. This location differential is based upon the location at which the delivery of the milk is made to the Sunny Hill plant as required by the terms of Section 8c(5) (A) of the Act. But, as stated in *Zuber*, supra, 402 F.2d at 672: "Plainly, this exception was designed to recognize differences in transportation costs only." In this connection there is no evidence in the record to support the differential. There is no evidence as to the transportation costs of producers who deliver milk to Sunny Hill's plant or producers who deliver milk to other plants in the St. Louis area. And nothing in the Order or the final decision of November 5th indicates that the differential was in recognition of differences in transportation costs. The 15 cent differential cannot stand as a location differential.

If the differential is to be sustained, it is as a market differential. The market differential is given to a producer to compensate him for the distance involved in delivering his milk. *Zuber*, supra, at 673. The defendant contends that the present differential can be sustained since Sunny Hill before being regulated customarily paid producers more than the minimum price.

Prior to being regulated Sunny Hill sought to obtain 100% Class I usage, and bought only enough milk from its producers to fill its requirements for Class I usage. Sunny Hill's producers had to find other outlets for their surplus milk. For that reason, Sunny Hill paid its producers a premium on the milk it bought for Class I usage. Since becoming regulated, Sunny Hill buys all

of its producers' milk and there is no problem of surplus milk. Under the Order the producers are guaranteed a minimum price for their milk and are thus realizing the full value of their milk. The premium paid to producers did not give Sunny Hill's producers an advantage over producers who sold to regulated handlers. Similarly, removing the differential under the Order does not place Sunny Hill's producers at a disadvantage. Rather, there would then be a "uniform price" to all producers selling milk to regulated handlers.

■ The court is aware that the Order is based in part upon the finding that Sunny Hill had customarily paid its producers a premium for milk. The evidence pertaining to the premium shows that it was based upon the "use" value of the milk to Sunny Hill—Class I usage. A premium based on the use value of milk is clearly not authorized by the Act. In fact, the use value is a basis that is prohibited by the Act. The court in Blair v. Freeman, supra, 370 F. 2d at 237, said: "We hold that, irrespective of motive, the Act forbids consideration of the use to which the milk of a particular producer or class of producers is put, historically or potentially, in adjusting the uniform minimum price to be paid to such producers."

Thus, while Sunny Hill producers give up the benefit of a premium, they obtain the benefit of a uniform or blended price for all of their milk which may be higher than in the absence of regulation.

■ Sunny Hill's producers still deliver to the same plant in Cape Girardeau. The Secretary was authorized to award a market differential to a producer "to compensate him for delivering his milk to a city market instead of to a country plant." H.R.Rep.No.1241, 74th Cong. 1st Sess. 10 (1935). The premium that had customarily been paid by Sunny Hill prior to regulation was not based upon the nature of the market at which the producers delivered their milk, but rather upon the use of the

milk by Sunny Hill in Class I utilizations. As a matter of fact, under the Order, producers in Cape Girardeau county delivering milk to handlers located in St. Louis and suburban St. Louis are not receiving a differential to compensate them for the added cost of moving the milk from more distant points to a city market. Rather, Sunny Hill's producers are being compensated while delivering to a country plant instead of to a city market—the reverse of the stated object of the market differential. The differential cannot be sustained as a market differential.

Handlers in the St. Louis metropolitan area sell milk in Cape Girardeau, Ste. Genevieve and Perry Counties. It can be assumed that the transportation costs are the same as from those counties to the metropolitan area, thereby equalizing costs of selling milk in metropolitan St. Louis and the "southern fringes" of the St. Louis marketing area. The November 5th decision of the Secretary finds that the differential "appears necessary to assure an adequate supply for plants in the area * * *." While that fact is a proper one on which to base an order, merely stating it does not establish it as true. There is nothing in the record to indicate that Sunny Hill could not obtain an adequate supply of milk at a price equal to that paid by other regulated handlers in the St. Louis marketing area, particularly if the price paid to the producers is the same for all regulated handlers.

■ The court finds that the 15-cent differential unconstitutionally discriminates against the plaintiff. The fact that plaintiff is the only member of a potential class affected by the provision does not of itself justify a finding of discrimination, although it should be noted that the Secretary stated that no other handlers were expected to become regulated. The finding of unlawful discrimination is based on the fact that there is no rational basis for the differential. There is no reasoned basis for

separating out and distinguishing plaintiff from all other regulated handlers in the St. Louis marketing area. The location differential contained in St. Louis Marketing Order § 1062.52(a) (2) is unauthorized and void. It is, therefore, unnecessary to discuss plaintiff's contention that it constitutes an economic trade barrier prohibited by 7 U.S.C.A. § 608c(5) (G).

■ Plaintiff also attacked the validity of § 1062.52(a) (3) of the Order (establishing Cape Girardeau as a base zone). This contention appears to have been abandoned by plaintiff inasmuch as plaintiff's memorandum in support of its motion for summary judgment makes no clear reference to that section and plaintiff repeatedly asks relief only in the form of the elimination of the 15-cent differential. In any event, plaintiff has failed to show a justiciable interest in adjustments at pool plants outside the counties of Cape Girardeau, Ste. Genevieve and Perry and more than 30 miles from the City Hall in Cape Girardeau, but nearer to such city hall than to the City Hall in St. Louis since no plants are presently in existence or expected to come into existence and, therefore, no adjustments affecting plaintiff in any way have been made or are expected to be made. No facts or allegations are urged in support of the attack on the zone provision save two hypothetical situations which are not illustrative of § 1062.52(a) (3). With respect to § 1062.52(a) (3) plaintiff has failed in its burden of establishing invalidity.

■ In enacting the 1935 amendments to the Agricultural Adjustment Act of 1933, Congress carefully attempted to delineate and circumscribe the Secretary's powers in order to avoid the delegation problems noted in A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L. Ed. 1570 (1935). Congressional intent is clear that the only authorized departures from the uniform price are enumerated in Section 8c(5) (B). Thus, a

differential varying the uniform price cannot be upheld unless it is one of the enumerated adjustments permitted under that section. In addition, the differential can be sustained only if the Secretary relied upon it as justification when the order was promulgated. In the present case, the differential relied on by the Secretary is a location differential or a market differential based on location, and the differential cannot be sustained as to either. The record and the final decision reflecting the facts of the record upon which it is based clearly show that as a "differential customarily applied by the handlers" it was not based on the location, transportation costs or nature of the market, but on the use to which milk was previously put by the handler, a prohibited basis for adjustment to the uniform price. The primary justification for the Order is price alignment with neighboring markets. Such a differential is not specifically authorized by Section 8c(5) (B), but the creation of an orderly market is an objective of the Act. There is no rational basis for singling out plaintiff as the only handler in the entire marketing area to be a buffer between marketing areas when it is undisputed that 69% of its sales are in the St. Louis marketing area. In fact, aside from the physical location of plaintiff's plant on the southern fringes of the St. Louis marketing area, there is little to differentiate plaintiff from the other regulated handlers in the St. Louis marketing area in terms of market availability and suppliers. The differential is not one of the enumerated adjustments permitted under 8c(5) (B) to vary the uniform price.

Accordingly, defendant's motion for summary judgment is denied and the plaintiff's motion for summary judgment will be sustained. The administrative ruling by the United States Secretary of Agriculture is vacated and set aside and the matter is remanded to the Secretary of Agriculture for such further proceedings as the law may require and as are consistent with this opinion.