**SUNNY HILL FARMS DAIRY CO., Inc., Plaintiff-Appellee,**

v.

**Clifford HARDIN, Secretary of Agriculture, Defendant-Appellant.**

No. 20201.

United States Court of Appeals, Eighth Circuit.

Aug. 25, 1971.

William D. Ruckelshaus, Asst. Atty. Gen., Alan S. Rosenthal, William D. Appler, Attys., Department of Justice, Washington, D. C., for defendant-appellant.

James S. Newberry, O'Herin & Newberry, Malden, Mo., for plaintiff-appellee.

Stuart H. Russell, Oklahoma City, Okl., James A. Doyle, Omaha, Neb., for amici curiae Associated Milk Producers, Inc. and Mid-America Dairymen, Inc.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY, Circuit Judge, and HANSON, District Judge.

HEANEY, Circuit Judge.

The primary question raised on this appeal is the validity of an amendment to the St. Louis, Missouri, Milk Marketing Order. The amendment requires handlers with plants in three southern counties of the marketing area to pay producers an additional fifteen cents per hundredweight for milk. The District Court

held that the differential was not a statutorily permissible one.

The detailed facts are found in the various administrative hearings and in the decision of the District Court.[1] We restate only those facts necessary to an orderly exposition of the issues.

In May, 1963, various amendments to the St. Louis Marketing Order were proposed. Sunny Hill Farms Dairy Company, a regulated handler with a plant in Cape Girardeau, Missouri, proposed that six new counties be added to the St. Louis marketing area.[2] Others proposed that a price differential of twenty-six cents per hundredweight would be necessary in some of the newly added counties to align prices in those counties with nearby marketing areas in Kentucky, Tennessee and Arkansas. Sunny Hill took no position on this issue.

The hearing examiner recommended addition of the six counties but declined to recommend either a plus or minus differential for handlers located in any of the new counties. 29 Fed.Reg. 6630 (1964).

Interested parties were given an opportunity to file exceptions to the proposed findings. None was filed by Sunny Hill, and it was not notified that exceptions to the recommendations with respect to the differential had been filed by others.[3]

The Assistant Secretary of Agriculture, after reviewing the record and the exceptions, modified the recommended decision with respect to differentials. He concluded:

" * * * a price 15 cents per hundredweight above the St. Louis price would be more appropriate for the Cape Girardeau area. Such a price appears necessary to assure an adequate supply for plants in the area, and also provide for better alignment of prices between orders.

"At the present time there are no plants located in the counties of Perry and Ste. Genevieve. If a plant were to be located in these counties, the Class I price should be the same as at Cape Girardeau to assure proper price alignment with markets to the south." 29 Fed.Reg. 15130, 15139 (1964).

The Assistant Secretary gave these reasons for his decision:

(1) Unless the existing order were amended, a location differential of minus twenty-two cents would be applicable at the Sunny Hill plant.

(2) Producer milk should be priced in relation to its location value. Generally, in order to obtain an adequate supply of milk, markets south of the surplus milk production area in Minnesota and Wisconsin require progressively higher prices corresponding to the increased cost of transporting milk from such alternative supply areas.[4]

(3) Cape Girardeau is approximately 120 miles south of St. Louis, and is located near other marketing areas in which a higher price for milk is paid.

(4) Sunny Hill had traditionally purchased most of its milk from producers located in Cape Girardeau County at a price approximately fifteen cents per hundredweight above the minimum prices received by producers in the county who supplied regulated handlers in St. Louis and the suburban St. Louis market.

1. Sunny Hill Farms Dairy Company v. Freeman, 307 F.Supp. 392 (E.D.Mo. 1969). For an earlier proceeding involving Sunny Hill, see United States v. Sunny Hill Farms Dairy Company, 258 F.Supp. 94 (E.D.Mo.1966).

2. The counties were Cape Girardeau, Bollinger, Jefferson, Perry, St. Francois and Ste. Genevieve.

3. Sunny Hill made a point of this fact at the 1967 administrative hearings. It con-

tended that the failure to notify it that exceptions had been filed to the examiner's report was a violation of due process. This issue has not been raised on this appeal.

4. For a discussion of the general validity of this premise, see Kessel, Economic Effects of Federal Regulation of Milk Markets, 10 J.Law & Econ. 51 (1967).

The Assistant Secretary's order became effective on February 1, 1965. 29 Fed.Reg. 18049.

Sunny Hill operated under the order for approximately a year. In January of 1966, it filed a petition with the Secretary of Agriculture, pursuant to 7 U.S.C. § 608c(15) (A), alleging that it was being damaged because it had to compete with other producers in St. Louis paying the lower St. Louis price. It challenged the fifteen-cent differential as being unlawful because:

(1) The differential resulted in the taking of Sunny Hill's property without due process of law.

(2) The differential constituted an economic trade barrier which limited and discouraged Sunny Hill from selling processed fluid milk in the city of St. Louis.

(3) The differential applied exclusively to Sunny Hill, contravening the Fifth Amendment to the United States Constitution.

(4) The differential was arbitrary in that it did not tend to effectuate the purpose of the act to encourage a sufficient quantity of pure and wholesome milk.

A hearing was held on these contentions. The hearing examiner found that Sunny Hill had failed to demonstrate that the differential was not in accordance with law, and he accordingly recommended that the petition be dismissed. He found that:

(1) The differential could be sustained either as a location adjustment or as a market differential customarily applied, stating:

"There [was] specific statutory authority for the differentials in question. Section 8c(5) of the act authorizes the use classification of milk and the fixing of minimum class prices, which prices 'shall be uniform as to all handlers, subject only to adjustments for (1) volume, market and production differentials customarily applied by the handlers subject to such order, * * * and (3) the locations at which delivery of such milk . . . is made to such handlers.' 7 U.S.C. § 608c(5) (A). * * * The Assistant Secretary found that milk in the three-county area in question [Cape Girardeau, Perry and Ste. Genevieve Counties] has a higher value than milk in St. Louis, that the differential would provide better alignment of prices between the St. Louis order and other orders in adjacent marketing areas, and that [Sunny Hill] customarily paid [its] producers about 15 cents more than the minimum prices applicable at St. Louis. * * * "

(2) The fact that Sunny Hill's profit had declined approximately forty percent during the year because of the differential did not amount to a taking of its property without due process.

(3) The fact that Sunny Hill was the only handler in the three-county area did not violate due process, because it was reasonable to divide the marketing area into two zones. Furthermore, the differential was by its terms applicable to any handlers entering the market in the future.

(4) There was no trade barrier within the meaning of the statutory prohibition against such barriers.

(5) Sunny Hill had not challenged the sufficiency of the evidence in support of the Secretary's findings that the differential was necessary to ensure an adequate supply of milk for the Cape Girardeau area.

Sunny Hill took exceptions to the examiner's conclusions and again requested an order which would eliminate the fifteen-cent location differential.

The Secretary denied the relief requested by Sunny Hill and dismissed the petition. In re Sunny Hill Farms Dairy, AMA Docket No. M 62–2 (U.S.D.A., March 30, 1967).

Sunny Hill then commenced this action in the United States District Court. Motions for summary judgment were made by Sunny Hill and the Secretary. The District Court granted Sunny Hill's motion on the grounds that the fifteen-cent

differential was not permissible under the statute. It held that the differential was not a "location differential," stating:

"* * * In the present case, the differential relied on by the Secretary is a location differential or a market differential based on location, and the differential cannot be sustained as to either. The record and the final decision reflecting the facts of the record upon which it is based clearly show that as a 'differential customarily applied by the handlers' it was not based on the location, transportation costs or nature of the market, but on the use to which milk was previously put by the handler, a prohibited basis for adjustment to the uniform price. The primary justification for the Order is price alignment with neighboring markets. Such a differential is not specifically authorized by Section 8c(5) (B), but the creation of an orderly market is an objective of the Act. There is no rational basis for singling out plaintiff as the only handler in the entire marketing area to be a buffer between marketing areas when it is undisputed that 69% of its sales are in the St. Louis marketing area. * * * * "

Sunny Hill Farms Dairy Company v. Freeman, 307 F.Supp. 392, 400 (E.D.Mo. 1969).

The Secretary of Agriculture appeals. He contends initially that the question of the validity of the differential under the statute was not properly raised in the administrative proceedings leading to this appeal, and that the question was improperly considered by the District Court and cannot now be considered by us.

■ We are not impressed with this argument. While Sunny Hill's petition of January, 1966, may have been inartful in challenging the validity of the order on the grounds that it was discriminatory and in violation of Sunny Hill's constitutional rights, it would require a highly technical reading of this record to reach the conclusion that Sunny Hill had not also raised the validity of the Secretary's regulations under the statute. Our review of the entire administrative record convinces us that the question of the validity of the Secretary's action under the statute was very much before the Secretary in all administrative proceedings. Furthermore, this question was discussed at length in each of the administrative decisions, including the final decision of the Secretary.

It is true that Sunny Hill, at the administrative hearings, did not challenge the sufficiency of the evidence justifying the differential as a permissible one under the statute; but Sunny Hill clearly challenged the statutory right of the Secretary to impose the differential for the reasons advanced.

■ We turn then to the question of whether the fifteen-cent differential was statutorily permissible. We believe that it was. It not only fits within the literal definition of a location adjustment permitted by the Act, but was found by the Secretary to be necessary to assure an adequate supply of milk for the plants in the area and to provide for better alignment of prices between orders. No challenge was lodged as to the sufficiency of the evidence to support these findings.

The District Court relied on Zuber v. Allen, 396 U.S. 168, 90 S.Ct. 314, 24 L. Ed.2d 345 (1969), in finding the differential statutorily impermissible. In *Zuber*, the Supreme Court held that a nearby differential payment to farmers within a stated radius of a designated market center was contrary to the provisions of Section 8c(5) (B). The Supreme Court declared that the differential was not a location differential for the simple reason that it was not dependent on the location at which the delivery of milk to a handler was made, but was rather dependent on the location of a producer's farm with reference to the primary market. The Court stated that the differential could thus be justified, if at all, only as a "market differential customarily applied" and that it could be

so justified only if it had as a purpose providing compensation to producers for rendering an economic service. The Court held that the nearby differential could not be so justified. The Court pointed out that the Secretary had failed to advance any economic justification for the nearby differential. It further noted that the differential was included in the original order as a recognition of the favored position of nearby producers in the fluid market and as an inducement to them to approve the order. We find nothing in Zuber v. Allen, *supra,* that requires reversal of the case before us. The differential here is based on the handler's location rather than the producer's and is not for the purpose of providing benefits to nearby producers.

A recent decision of the Court of Appeals for the District of Columbia is more in point. Fairmont Foods Company v. Hardin, 442 F.2d 762 (D.C. Cir. 1791). In *Fairmont,* a location differential was involved. There, as here, the Secretary divided a marketing area into three zones. Handlers in the central zone were required to pay producers a fifteen-cent differential, and handlers in the western zone were required to pay producers a forty-cent differential. The Secretary found that the differential was necessary to reflect the cost of moving milk from the eastern to the central and the western zones, and to align the prices in the central and western zones with the higher prices in the adjacent Colorado and Black Hills marketing areas. On appeal, the Court held that the differential could not be justified under the statute as there was no support in the record for the Secretary's finding that higher prices were necessary to reflect the cost of moving milk from east to west. It pointed out that the record showed that the basic movement of milk in the Nebraska marketing area was from the west to the east. It added:

"If there is a slight deficit in the western zones on occasion, due to the Coop's desire to take advantage of the higher Colorado prices, that does not warrant deviation from the uniform price payable by handlers, which the Act contemplates as the norm for milk marketing orders."

*Id.* at 770.

The Court also found that there was no support in the record for the Secretary's finding that the higher price in the central and western zones was necessary to avoid serious disruption of the eastern Colorado marketing area. It noted that in handling this problem through the Nebraska order, the Secretary had imposed the burden of higher prices on all handlers receiving milk within the central and western zones whether or not they intended to market that milk in Colorado. The Court further noted that very little milk was sold by Nebraska handlers in Colorado, and that, to the contrary, Colorado handlers accounted for a substantial share of milk marketing in western Nebraska. The Court concluded by saying:

"* * * Assuming that intra-Order differentials may constitute a proper means of dealing with dislocations between western Nebraska and eastern Colorado, there was insufficient need in this case for their application."

*Id.* at 772.

*Fairmont* can thus be distinguished from this case on at least three grounds. First, the sufficiency of the evidence to support the Secretary's findings was challenged in *Fairmont* but was not challenged here. Second, there is little evidence in this record to dispute the Secretary's finding that the order was necessary to maintain a sufficient supply of milk in the Cape Girardeau area. On the contrary, the record indicates that Sunny Hill paid a premium to Cape Girardeau producers to obtain an adequate supply of milk before the order was issued, and that after the order was issued, it still paid approximately fifteen cents per hundredweight to producers not covered by the order to obtain an adequate supply of milk during some seasons of the year. Third, there is little

evidence to contradict the Secretary's finding that the fifteen-cent differential was necessary to align the Cape Girardeau prices with those in Memphis. Indeed, the record shows affirmatively that Sunny Hill sold approximately nineteen percent of its milk in the Memphis marketing area at a price in excess of that established for the Cape Girardeau zone. The president of Sunny Hill conceded that, were the differential removed, he would have an advantage in the Memphis area:

"* * * The Memphis market may be put at a competitive disadvantage, and that's their problem. The fact that I am put at a competitive disadvantage in the Cape Girardeau market is my problem, and this is what I am trying to work out. So whether or not I would have a competitive advantage over the Memphis market is definitely a problem, but it is not my problem."

We find that the problem referred to was one for the Secretary of Agriculture, who has the responsibility for carrying out the broad purposes of the legislation.

The *Fairmont* Court stated in a footnote:

"The Secretary argues among other things, that the differentials set by this Order are based on the 'locations at which delivery . . . is made to . . . handlers,' and thus fit within the literal definition of a location adjustment permitted by the Act. 7 U.S.C. § 608c(5) (A) (3). We cannot agree, however, that a mere difference in location is sufficient reason to require one handler to pay higher prices than another governed by the same Order. There must still be some relation between the price differential and economic benefit."

Fairmont Foods Company v. Hardin, *supra* at 767, n. 23.

We agree that a differential is not a location differential within the meaning of the Act simply because the Secretary calls it one. We also agree that the Secretary is not free to establish a differential for every location at which milk is delivered to a handler. He always has the additional burden of establishing that the differential is, in fact, based upon the handler's location and that it is required to accomplish the broad purposes of the Act. We feel that the Secretary has borne both of these burdens here.[5]

Sunny Hill raises two additional issues: first, that the location differential discriminated against Sunny Hill and, second, that it created an impermissible trade barrier.

The District Court found that the differential was unlawfully discriminatory because there was no rational basis for it. The court said:

"* * * There is no reasoned basis for separating out and distinguishing plaintiff from all other regulated handlers in the St. Louis marketing area. * * *"

Sunny Hill Farms Dairy Company v. Freeman, *supra* 307 F.Supp. at 399.

The essence of this argument has been met in the earlier sections of this opinion. In our view, there was a reasonable basis for distinguishing between handlers in Cape Girardeau, Ste. Genevieve and Perry Counties, and handlers in the remaining marketing area. As we have pointed out, the Secretary properly found that the milk had a higher location value at Cape Girardeau than it did in St. Louis.

Because the District Court ruled in favor of Sunny Hill on other grounds, it was not required to discuss Sunny Hill's contention that the differential constituted an economic trade barrier prohibited by 7 U.S.C. § 608c(5) (G). Since we have reversed the trial court on the

---

5. Zuber v. Allen, 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); United States v. Rock Royal Co-operative, 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); H. P. Hood & Sons v. United States, 307 U.S. 588, 59 S.Ct. 1019, 83 L.Ed. 1478 (1939).

other grounds, however, we must consider this contention.

Section 8c(5) (G) provides:

"No marketing agreement or order applicable to milk and its products in any marketing area shall prohibit or in any manner limit, in the case of the products of milk, the marketing in that area of any milk or product thereof produced in any production area in the United States."

■ The order promulgated by the Secretary obviously does not prohibit Sunny Hill from marketing milk purchased by it in the St. Louis area or, for that matter, in the Memphis or Paducah areas. The order does make it less profitable for Sunny Hill to sell in the St. Louis market than it would be were Sunny Hill not required to pay its producers the fifteen-cent differential. But the differential is specifically authorized by the Act and reasonable under the circumstances of the case. It thus cannot be construed as establishing an illegal trade barrier. If all location differentials were to be so construed, nothing would be left of the Secretary's power to promulgate milk marketing orders.

In our view, neither Lehigh Valley Co-op Farmers v. United States, 370 U.S. 76, 82 S.Ct. 1168, 8 L.Ed.2d 345 (1962), nor Polar Ice Cream & C. Co. v. Andrews, 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389 (1964), indicate a contrary result, the former because it involved clearly unreasonable compensatory payments and the latter because it involved purchase and allocation requirements imposed upon distributors by a state government.

In summary, we hold that on the basis of the record presented to us, the zoning of the St. Louis milk marketing area was statutorily and constitutionally permissible.

The judgment of the District Court granting summary judgment to Sunny Hill is reversed. The case is remanded to the District Court with directions to enter summary judgment in favor of the Secretary of Agriculture.