**Don WALMSLEY, et al., Appellants,**

v.

**John R. BLOCK, Secretary of Agriculture of the United States; Mid-America Dairymen, Inc., Appellees.**

**No. 82–2375.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1983.

Decided Nov. 1, 1983.

Carlyle C. Ring, Jr., Kaler, Worsley, Daniel & Hollman, Washington, D.C., for appellants.

James Michael Kelly, Associate Gen. Counsel, Raymond W. Fullerton, Asst. Gen. Counsel, Thomas D. Edmondson, U.S. Dept. of Agriculture, Washington, D.C., for appellees.

James A. Doyle, Omaha, Neb., John C. Gage, Gage & Tucker, Kansas City, Mo., for appellee-intervenor Mid-America Dairymen, Inc.

Before HEANEY, Circuit Judge, and HENLEY and BROWN,* Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

Appellants, a number of independent dairy farmers, seek to have the final rule of the Department of Agriculture amending the Nebraska-Western Iowa Milk Marketing Order No. 65, 46 Fed.Reg. 19813 (1981), declared invalid. Under that order, the minimum price paid to appellants for their milk was reduced in most instances by 7¢ and 9¢ per hundredweight. The district court granted the Secretary of Agriculture's motion for summary judgment, holding, *inter alia,* that the Secretary followed proper procedures and that the order was supported by substantial evidence. We affirm.

The purpose of milk orders, which are issued pursuant to the Agricultural Marketing Agreement Act of 1937, as amended (hereinafter "the Act"), 7 U.S.C. §§ 601 *et seq.,* is to maintain an adequate supply of milk for the public and to provide at the same time that farmers are paid an adequate price for their milk. The workings of the Act have been described in earlier cases. *See, e.g., Zuber v. Allen,* 396 U.S. 168, 90 S.Ct. 314, 24 L.Ed.2d 345 (1969); *Alexander v. National Farmers Organization,* 687 F.2d 1173 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2110, 77 L.Ed.2d 314 (1983); *Schepps Dairy, Inc. v. Bergland,* 628 F.2d 11 (D.C.Cir.1979).

The Act provides for the classification of milk in accordance with the form in which or the purposes for which it is used and for the establishment of minimum prices for

---

* The Honorable Bailey Brown, United States Senior Circuit Judge for the Sixth Circuit, sitting by designation.

each class of use. In general, producers receive a uniform price for all their milk, regardless of its specific utilization by the handlers. The uniform "blend" price payable to producers is subject, however, to certain adjustments authorized by statute, including adjustment for the location at which delivery of the milk is made by a producer. 7 U.S.C. § 608c(5)(B)(c).

At issue here are location adjustments. Prior to its amendment, the Nebraska-Western Iowa order divided the marketing area into three flat pricing zones; all counties drew equally out of the pool subject to location adjustments in three areas. The most populated area, which included Douglas and Lancaster Counties, was in Zone 1 and received no location adjustment. The counties generally east of this area, Zone 2, received a -10¢ adjustment. The counties in Western Nebraska, Zone 3, received a + 15¢ adjustment.

According to many area handlers and producers, location adjustment changes became necessary to achieve an equitable pricing relationship between the Nebraska-Western Iowa region and the Eastern South Dakota region, and to provide an economic incentive for milk to move to the primary population centers, principally Omaha and Lincoln. The location adjustment changes proposed for Northeastern Nebraska related to existing location adjustments applicable at plant locations in Southern South Dakota and Minnesota.

Under the order as amended the boundaries of Zone 1 changed slightly, but Zone 1 continued to be free of location adjustment allowances. Zone 2 was eliminated and adjustments in the affected counties were based on their proximity to Omaha or Norfolk, Nebraska. A new Zone 2 was created, including the counties in Western Nebraska included in Zone 3 in the previous order. The new Zone 2 retained the + 15¢ adjustment of the eliminated Zone 3.

Appellants deliver their milk primarily to supply plants located at Hartington and Orchard, Nebraska. Under the unamended order, there were no location adjustments with respect to either city. Under the amended order, there is a -7¢ location adjustment as to Hartington.

Appellants argue on appeal that (I) the amended order is contrary to law because the Secretary did not follow proper procedures in issuing the amendment, and (II) the location adjustment provisions of the amended order are not supported by substantial evidence.

We affirm the district court's rejection of both arguments.[1]

I. Whether the Secretary followed proper procedures

We describe the proceedings briefly.

On October 4, 1978 the Agricultural Marketing Service (AMS), United States Department of Agriculture, published notice of a public hearing on proposed rulemaking. The notice of the hearing provided in pertinent part:

> The hearing is being held to consider industry proposals to amend certain provisions of the Nebraska-Western Iowa milk marketing order. The major proposals would modify the shipping requirements for pool supply plants, *change the Class I price structure within the marketing area,* modify *location adjustment provisions* and revise the diversion limitations on producer milk. Proponents contend that the requested order changes are needed to reflect changed marketing conditions and to insure orderly marketing in the area.

43 Fed.Reg. 45881 (1978) (emphasis added); the "supplementary information" portion of the notice provided in part:

> The purpose of the hearing is to receive evidence with respect to the economic

---

1. Appellants also challenge the district court's holding that they lacked standing to contest the Secretary's order. From the record on appeal, the injury to plaintiffs may not be entirely clear. However, we have concluded, albeit with some misgiving, that the allegations of injury are sufficient to satisfy minimal concepts of standing to sue and thus proceed to assessment of the merits of the other issues.

and marketing conditions which relate to the proposed amendments, hereinafter set forth, *and any appropriate modifications thereof,* to the tentative marketing agreement and to the order.

*Id.* at 45882. (Emphasis added.) Four of the proposed amendments related to changes in price zones and location adjustments. However, none of the four amendments proposed the specific changes in location adjustments ultimately ordered by the Secretary.

A hearing was held on October 24–27, 1978. A recommended decision making the changes at issue here was published on July 30, 1979. 44 Fed.Reg. 44523 (1979). Several parties, including some of the appellants objected that the recommended revisions in the price zones and location adjustments went beyond the scope of the proposals specifically set forth in the notice of hearing. The Secretary thereupon issued an order reopening the hearing, stating as follows:

In their exceptions, several parties claimed that some of the Department's recommendations concerning Class I price zones and location adjustments went beyond the scope of the proposals specifically set forth in the hearing notice. *These parties indicated that had they known that certain order changes tentatively adopted by the Department were under consideration, they would have submitted specific testimony regarding the possible changes. The parties asked that they be given an opportunity to present evidence on the proposed order changes at a reopened hearing.*

In the interest of assuring that all interested parties have an opportunity to testify on all of the issues involved in this proceeding, it is concluded that the hearing should be reopened. [Emphasis added.]

Appellants argue that they were not given a fair hearing because no proponent of the specific location adjustment provisions contained in the amended order came forward at either the first or second hearing to offer substantial evidence in support of those provisions. They argue further that because they were not given adequate notice that the location adjustment provisions at issue were under consideration at the first hearing, they were effectively denied their right to cross examine witnesses.

Appellants' arguments rely heavily on their assumption that 5 U.S.C. § 556(d) is applicable to the proceedings below. Section 556(d) provides in pertinent part that the proponent of a rule or order has the burden of proof, and that proponent witnesses may be subject to cross-examination. The Secretary disagrees with this assumption, arguing that even though 7 U.S.C. § 608c(4) requires that marketing orders be based on evidence presented at a hearing, § 608c(4) does not require a hearing "on the record" so as to trigger the provisions of the Administrative Procedure Act, 5 U.S.C. §§ 553(c) and 556–57. The Secretary cites *United States v. Florida East Coast Ry. Co.,* 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973), and *International Harvester Co. v. Ruckelshaus,* 478 F.2d 615, 630 n. 48 (D.C. Cir.1973). Appellee Mid-America Dairymen, Inc. joins in the Secretary's argument, citing *Marketing Assistance Program, Inc. v. Bergland,* 562 F.2d 1305, 1309 (D.C.Cir. 1977).

■ We need not decide this issue because we have concluded that the proceedings would be in compliance with § 556, if it were determined to be applicable. Both of appellants' contentions concerning the failure of a proponent to offer substantial evidence and their inability to cross-examine witnesses hinge on the adequacy of the original notice of hearing. We disagree with appellants' initial premise that the original notice was inadequate to put them on notice of the changes under consideration. The notice referred to modification of, *inter alia,* changes in price zone and location adjustment provisions to insure orderly marketing in the area. Amendment 16, one of the four proposed amendments relating to changes in price zone and location adjustments, specifically dealt with lo-

cation adjustments outside the marketing area; the amended order likewise provides for location adjustments outside the marketing area.[2]

Notice of proposed rule making under 5 U.S.C. § 553(b) "must be sufficient to fairly apprise interested parties of the issue involved ..., but it need not specify every precise proposal which [the agency] may ultimately adopt as a rule." *Trans-Pacific Freight Conference of Japan/Korea v. Federal Maritime Comm.,* 650 F.2d 1235, 1248 (D.C.Cir.1980). *Accord California Citizens Band Ass'n v. United States,* 375 F.2d 43, 48 (9th Cir.1967), *cert. denied,* 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112 (1967); *Jones v. Bergland,* 456 F.Supp. 635 (E.D.Pa.1978).

We consider the notice to have adequately informed the parties as to the nature of the changes under consideration, and we may consider all of the evidence offered at the first hearing to determine whether there is substantial evidence to support the Secretary's order. As indicated in the next section of this opinion, industry proponents of the need for changes in price zones and location adjustments presented evidence to support the Secretary's order and appellants were given ample opportunity to cross-examine witnesses at the initial hearing. Finally, the Secretary, at appellants' request, reopened the proceedings to allow all parties disagreeing with the proposed order to present evidence in opposition. Appellants chose not to do so, relying instead on their technical argument that a proponent had to come forward and offer proof. We are of the view that appellants had ample opportunity to make their views known, and should not now be heard to complain. *See Ideal Farms, Inc. v. Benson,* 181 F.Supp. 62 (D.N.J.1960), *aff'd,* 288 F.2d

608 (3d Cir.1961), *cert. denied,* 372 U.S. 965, 83 S.Ct. 1087, 10 L.Ed.2d 128 (1963).

## II. Substantial Evidence

Appellants contend there is not substantial evidence to support the amended order. Their argument begins with the principle that, since uniform prices are a core concept under the Act, *see Zuber v. Allen,* 396 U.S. at 179, 90 S.Ct. at 320; *Blair v. Freeman,* 370 F.2d 229, 237 (D.C.Cir.1966), any deviation from uniformity must be fully justified on the record. *Fairmont Foods Co. v. Hardin,* 442 F.2d 762, 766 (D.C.Cir.1971). They allege that the location adjustment is simply a "location-transportation differential," *Zuber v. Allen,* 396 U.S. at 182–83, 90 S.Ct. at 322–323, and must be supported by substantial evidence showing a real economic service based on transportation costs. If transportation costs are substantially equal for all plants, they argue, no location adjustment is warranted.

We do not accept appellants' basic premise that the location adjustment may only reflect actual difference in transportation costs of delivery to the handler of the producer's choice. This court has held that the location adjustment serves to encourage milk to move from outlying market locations and to align prices among neighboring markets. In *Sunny Hill Farms Dairy Co. v. Hardin,* 446 F.2d 1124, 1126 (8th Cir.1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 940, 30 L.Ed.2d 786 (1972), we upheld the Secretary's imposition of a + 15¢ location adjustment for handlers in the Cape Girardeau area "to assure an adequate supply for plants in the area and also provide for better alignment of prices between orders." 29 Fed.Reg. 15130, 15139 (1964).

2. Appellants attach great significance to the fact that the hearing examiner at the initial hearing ruled that a proposal to extend Amendment 16 to apply within the marketing area was outside the scope of the hearing. They argue that the hearing examiner's action was tantamount to barring consideration of any pricing changes not specifically noticed. We disagree.

The hearing examiner gave no indication that such was the import of her ruling. Furthermore, the hearing was broad in its scope, with evidence presented concerning the marketing trends in the area and the need for movement of milk to the Omaha area and alignment of prices with other milk orders.

The Secretary's rationale for the location adjustment changes made under the amended order is consistent with our holding in the *Sunny Hill Farms* case. The Secretary stated:

> The location pricing provisions under the order (zone prices and location adjustments at distant plants) assist in encouraging the movement of milk from supply areas to the principal population centers where it is processed for fluid use. Such provisions reflect the lesser value of milk when received at an outlying plant location or when diverted to an outlying location. Additionally, the location pricing provisions assist in maintaining a proper price alignment with nearby markets, which is essential to the attraction of raw milk supplies to various locations where needed.

46 Fed.Reg. 8533, 8549 (1981).

■ We turn, then, to the question of whether the Secretary's decision is adequately supported by substantial evidence. As we stated in *Sunny Hill Farms*, 446 F.2d at 1130

> We agree that a differential is not a location differential within the meaning of the Act simply because the Secretary calls it one. We also agree that the Secretary is not free to establish a differential for every location at which milk is delivered to a handler. He always has the additional burden of establishing that the differential is, in fact, based upon the handler's location and that it is required to accomplish the broad purposes of the Act.

Plainly, there must be a substantial showing of relation between the price differential and economic benefit. *Fairmont Foods Co. v. Hardin*, 442 F.2d at 767 n. 23.

■ We find substantial evidence to support the Secretary's order. First of all, the Secretary's decision was based in part on broad market trends; the Secretary cited the fact that Class I prices "generally increase with distance from the surplus milk producing region of Minnesota and Wisconsin" to "reflect the theory that the Class I price . . . should not exceed the cost of importing milk from alternative sources of production." 46 Fed.Reg. at 8549. As the court noted in *Fairmont Foods Co. v. Hardin*, 442 F.2d at 767–68, "[t]he Secretary may take account of large trends and flows when formulating regulatory policies."

Furthermore, the Secretary relied on evidence from the record relating to (a) handler location, (b) the need to encourage movement of milk to the primary market, and (c) the need to align prices among neighboring markets.

**(a) Handler location.** The Secretary cited multiple examples to support his conclusion that under the unamended order there was inadequate or no price adjustment to cover the cost of transporting milk from supply plants in Northern Nebraska to the consumption center in Southern Nebraska. These examples included supply plants at Orchard, O'Neill and Hartington, Nebraska, and Sibley, Iowa. The Secretary stated

> There is presently no price adjustment to cover the cost of transporting milk from these supply plants to distributing plants to the south. Consequently, these costs must either be absorbed by the supply plant operator or, more likely, passed on to the distributing plant operator buying the milk.

46 Fed.Reg. at 8550.

**(b) Movement of milk to primary market.** With respect to the need to encourage movement of milk to the primary market, the evidence reflected that the largest population center in the marketing area is Omaha-Council Bluffs; there are, in addition, two smaller urban areas, Lincoln and Sioux City. There are four major distributing plants in the Omaha-Lincoln area. Several witnesses testified that under the unamended order there was inadequate incentive to move milk to the Omaha-Lincoln area because of the flat pricing zone. For instance, milk shipped to Lake Preston, South Dakota, about 260 miles from Omaha, received a price only 12¢ below the price in Omaha. Milk diverted to non-pool plants in Benton and Clarkfield, Minnesota, at dis-

tances of 230 miles and 270 miles respectively from Omaha, were priced only 16¢ and 37¢ respectively below the Omaha price. Evidence also was introduced to show that the marketing area had become heavily dependent on milk shipped from Southwest Minnesota (15% of the producer milk or the market), Western Iowa (19%) and Eastern South Dakota (13%).

**(c) Price alignment.** With respect to the need to align prices among neighboring markets, the evidence reflected that one dairy in particular, Wells Dairy, complained of its price disadvantage in comparison with competitors in neighboring Orders 76 (Eastern South Dakota), 68 (Upper Midwest) and 79 (Iowa), where the Class I differential prices were $1.40, $1.06–1.12 and $1.40 or less respectively. Wells' differential price was $1.50. Furthermore, the evidence reflected Wells' complaint that, because of its distance from Omaha, it suffered a competitive disadvantage in the Omaha market.

The amended order was specifically intended to remedy these difficulties:

> The current pricing provisions contribute to the problems described by distributing plant operators of getting a sufficient supply of milk at a reasonable price. By revamping Zone 1 as proposed herein and changing the application of location adjustments to outlying plants, the Zone 1 uniform prices will be much more attractive relative to supply areas to the north. It will better insure the availability of milk at plants in the market's population centers.

46 Fed.Reg. at 8550.

The effect of the amended order is to provide minus location adjustments of increasing magnitude outside of the two remaining pricing zones and to the north and west away from Omaha and Norfolk. The result should be to lower the price producers receive for deliveries at outlying plants and encourage more deliveries to the market center.

In sum, on the record as a whole, we find the Secretary's order regarding location adjustments to be supported by substantial evidence.

The judgment of the district court is affirmed.