MARKETING ASSISTANCE PROGRAM, INC., Brookshire Dairy Products Company and J. W. McWhorter, Appellants,

v.

Bob BERGLAND, Secretary of Agriculture of the United States et al.

No. 76–1696.

United States Court of Appeals, District of Columbia Circuit.

Argued May 16, 1977.

Decided Aug. 22, 1977.

Carlyle C. Ring, Jr., Washington, D. C., with whom Lawrence D. Hollman, Washington, D. C., was on the brief, for appellants.

Richard A. Graham, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Asst. U. S. Atty., James Michael Kelly, Asst. Gen. Counsel, Dept. of Agriculture and John H. Sandor, Atty., Dept. of Agriculture, Washington, D. C., were on the brief, for Federal appellees.

Frank H. Strickler, Washington, D. C., entered an appearance for appellees, Gulf Dairy Association, Inc., et al.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

Opinion for the Court filed by LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge.

This is an appeal from a decision of the district court granting summary judgment to the Secretary of Agriculture in an action attacking the validity of a milk marketing order. Marketing orders are promulgated on a regional basis and establish the minimum price producers receive for their milk. At issue here is an order including Mississippi in the New Orleans marketing region.

Plaintiffs [1] concede that the order is supported by substantial evidence, but allege

1. Plaintiffs are Marketing Assistance Program, Inc. (MAP), a producer cooperative; J. W. McWhorter, a dairy farmer and a member of MAP; and Brookshire Dairies, Inc., a handler

that the Secretary unfairly limited the scope of the hearing on the order to exclude plaintiffs' proposals. We disagree.

Prior to the adoption of the present order in April 1976, Mississippi milk producers operated under a free market system. The preceding order had been suspended in April 1973 at the request of Dairymen, Inc. (DI), the dominant milk cooperative in the area.[2] In April 1974 DI shifted course and proposed that Mississippi be incorporated into the New Orleans marketing order. Officials of the Department of Agriculture and representatives of DI conferred extensively over the next six months in order to work out a mutually satisfactory proposal.[3] DI's modified proposal and petition for a hearing were formally announced by the Department of Agriculture on December 4, 1974. Plaintiffs, who represent a comparatively small number of milk producers, submitted counterproposals on January 17, 1975, to which the Department responded by letter on March 10, 1975.

Plaintiffs were permitted to submit proposals of their own and to support those proposals with written submissions. The Secretary did not exclude those proposals without giving reasons, nor were plaintiffs prevented from participating in the hearing or from arguing against other proposals considered there. Their contention is that, beyond the level of participation allowed them in this rulemaking, the Secretary was *required* to include all their proposals within the scope of the hearing unless irrelevant to the purposes of the Act.

■ While the Secretary's marketing regulations are referred to as "orders," they are really instances of notice and comment rulemaking. The Secretary has the author-

ity to determine the reasonable scope of a rulemaking proceeding and this court will not interfere unless that determination has been shown to be arbitrary and capricious. No such showing has been made in this case.

Three of plaintiffs' proposals were excluded from the hearing on the proposed extension of the New Orleans marketing region:

■ 1. The Secretary declined to hold hearings on plaintiffs' proposal to include Memphis and parts of Alabama as well as Mississippi in the New Orleans region. Though plaintiffs were urging the creation of a new milk marketing region, they refused to supply the information Department of Agriculture regulations required before such a request could be considered. When the Secretary called plaintiffs' attention to the need for this information the plaintiffs' only reply was that the Secretary had much better information than they had. Plaintiffs had the burden of producing some evidence to show that the Secretary was arbitrary. This they failed to supply either to the Department of Agriculture or this court.

In his final decision the Secretary observed that although there were some data showing service to Memphis by Mississippi producers, the figures were in the nature of a statistical quirk, and that, in fact, the Mississippi producers did not have a substantial impact on the Memphis market. This would obviously be pertinent, but we do not rely on this stated position, since it appears in a document in a proceeding which had already been structured so that Memphis was not an issue, and hence there

that processes and distributes milk in Mississippi.

**2.** Under the Act marketing orders must be terminated at the request of a majority of the producers. 7 U.S.C. § 608c(16). New marketing orders may be issued only if approved by at least two-thirds of the producers. 7 U.S.C. § 608c(8). In either case the Act specifies that members of cooperatives shall vote as a bloc.

7 U.S.C. § 608c(12). Since DI represents a substantial majority of Mississippi milk producers, it can effectively suspend or prevent the adoption of any marketing order.

**3.** It is customary for the Department to negotiate cooperatives' marketing order proposals to assure compliance with the provisions and policies of the Act. Forest affidavit at ¶ 8, J.A. 287.

had been no opportunity to present information, if any was available, tending to show that Mississippi producers did have an impact on the Memphis market. Accordingly, this opinion rests solely on the failure of plaintiffs to provide the Secretary with the information requisite to the consideration of their proposal.

■ 2. The Secretary also refused to hold hearings on plaintiffs' proposal that if Mississippi were included in the New Orleans region, the Secretary should adopt a pricing formula similar to that used by the State of Louisiana. Plaintiffs argued that failure to adopt the state formula, which yielded higher prices, would result in discrimination against Mississippi producers. There is some question whether this issue is still alive since the state order has since been terminated. This is not entirely clear since plaintiffs' contention, if accepted, might conceivably result in a ruling that the federal order was invalid when issued, with some consequences for payments made and received while the order was in effect. We pass all these problems by on the ground that the Secretary clearly acted within his discretion. Only one year before the hearing on the extension of the New Orleans order the Secretary, after holding national hearings, had rejected the Louisiana formula and adopted a national approach using a formula to calculate milk prices by reference to the price in the major dairy producing regions of Minnesota and Wisconsin. The Secretary was not required to reexamine this national policy merely because a different course was proposed in a particular market. It was not arbitrary for the Secretary to apply this national formula to the New Orleans-Mississippi region in order to preserve roughly uniform national prices and to prevent the diversion of milk from other regions because of higher prices in this one.

3. The Secretary failed to incorporate into the hearing an inquiry into whether DI, the leading milk cooperative in the area, had used unfair competitive practices against independent cooperatives. The Secretary also failed to consider MAP's proposal for specification in the order of unfair trade practices and methods of competition.

■ In rejecting these suggestions, the Secretary noted that these matters were pending in other litigation, including an antitrust action brought by the Justice Department against DI. The fact that this complex and vexing subject was under development in other litigation is a reasonable basis for the Secretary to abstain from including it within the current marketing hearing.

Additionally, since the Agricultural Marketing Act appears to restrict the Secretary's regulatory power to actions taken by DI as a handler,[4] the Secretary asserts that he has no authority over the practices complained of by the plaintiffs. We need not decide whether the Secretary was barred from regulating DI's allegedly unlawful activities, since even the existence of a dispute regarding the scope of his jurisdiction reenforces the Secretary's exercise of discretion to exclude the proposal from the current hearing pending developments in the antitrust litigation.

Apart from the restrictions in the scope of the hearing, plaintiffs assert that the order is invalid because the same Department of Agriculture employee who met with representatives of DI before the hearing and helped draft the proposed order also helped the Secretary write his final decision.

■ Nothing in the Agricultural Marketing Agreement Act prohibits an employee from acting as both an investigator and a decision maker. As for the Administrative Procedure Act, its restriction against com-

---

**4.** 7 U.S.C. § 608c(7) provides, in pertinent part:
In the case of agricultural commodities . . orders shall contain one or more of the following terms and conditions:

(A) Prohibiting unfair methods of competition and unfair trade practices in the handling thereof.

mingling of functions appears in subsection (d) of 5 U.S.C. § 554, a section which applies, see § 554(a), in cases of "adjudication." Appellant contends that the prohibition against commingling in subsection (d) applies, in its words, in every situation where an employee "presides at the reception of evidence pursuant to section 556." Appellant submits that the case authority restricting subsection (d) to adjudications [5] is in error or distinguishable. The point has not been the subject of decision in this circuit, nor need we decide it in this case. For even accepting appellant's position for purpose of discussion, that would only extend the APA prohibition against commingling of functions to rulemaking proceedings conducted under 5 U.S.C. §§ 556 and 557—and that is required only for rulemaking required by statute to be "on the record." [6]

■ The proceeding at issue here was clearly an instance of notice and comment rulemaking. The marketing order applied prospectively to all producers and handlers in the region and was based on broad policy considerations. *See American Airlines v. CAB*, 123 U.S.App.D.C. 310, 315, 359 F.2d 624, 629 (en banc), *cert. denied*, 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75 (1966). This was not a rulemaking required to be "on the record" within the meaning of § 554, since the Agricultural Marketing Act does not use the words "on the record" or their equivalent. *See United States v. Florida East Coast Railway*, 410 U.S. 224, 273–38, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973). We are aware that the Administrative Procedure Act was amended in 1976 [7] to provide, as a part of 5 U.S.C. § 557—

no member of the body comprising the agency, administrative law judge, or other employee who is or may reasonably be expected to be involved in the decisional process of the proceeding shall make or knowingly cause to be made to any interested person outside the agency an ex parte communication relevant to the merits of the proceeding.[8]

But § 557 only applies to adjudications and rulemaking on the record; these amendments are thus inapplicable to this case.

■ Apart from the issue of statutory requirement, there is the possibility of a contention that the actions of the employee of the Department of Agriculture were such as to make the procedure unfair. The record does not warrant such a conclusion. So far as appears, those actions were consistent with a fair investigation, including consultation with informed sources, and a recommendation based on and congruent with the record that developed.

*Affirmed.*

---

5. *Willapoint Oysters, Inc. v. Ewing*, 174 F.2d 676 (9th Cir.), *cert. denied*, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1949); *Hoffman-La-Roche, Inc. v. Kleindienst*, 478 F.2d 1, 13 (3d Cir. 1973).

6. 5 U.S.C. § 554(d). We note that the discussions between DI and Mr. Dunn of the Department of Agriculture concerning DI's initial proposal and other possible orders occurred in August, 1974, prior to the Department's notices of hearings on the DI and MAP proposals in March, 1975. 30 Fed.Reg. 11878 (Mar. 14, 1975); 30 Fed.Reg. 12660 (Mar. 20, 1975).

There is no suggestion of any ex parte contacts between interested parties and decisionmakers after notice of proposed orders. We have no occasion to consider the scope of *Home Box Office, Inc. v. FCC*, No. 75–1280 (D.C.Cir. Mar. 25, 1977), at ——. *See also Action for Children's Television v. FCC*, 564 F.2d 458 (1977), at 474–478.

7. Pub.L. 94–409, § 4(a), Sept. 13, 1976, 90 Stat. 1246.

8. 5 U.S.C. § 557(d)(B)(1) (1976).